Final case for argument this morning is 14-1. 14-8-7 In Re NAS Nalle Automation Systems Good morning, Your Honors. Andrew Lake on behalf of the Patent Owner NAS Automation Systems. This case is here on appeal because after the smoke has cleared in this re-examination proceeding, dealing with multiple grounds of rejection, the case now turns on a fundamental question of whether the combination of references meets all of the claim elements of claim one. The references at issue here are Williams and Shanklin as relevant here for the subject matter for purposes of this appeal. And so this case is going to turn on the claim language. Claim one, which we acknowledge is representative of the subject matter for purposes of this appeal, is directed to a cutter sealer for cutting and sealing layers of polymer film. The cutter sealer having a blade, having a cutting edge, which is adapted to transfer heat from the blade to the layers of film to soften a portion of the layers of film along the cutting edge. Okay. So what's missing on the references relied on by the Patent Officer? What is missing is the element of softening a portion of the layers of film along the cutting edge of the blade. Without liquefying. Without liquefying. Now, why isn't it the case that since Shanklin, which does not liquefy, but does have a heating component, heats to, I think, 270 to 280 degrees Fahrenheit, why doesn't that read on the heating aspect of the claim? Because if I read the specification correctly in your patent, you only heat to about 190 to 200 and, what is it, 220, something like that. Yes, sir. In any event, so Shanklin is even warmer than your patent. Why doesn't that essentially take care of the problem of the heating, the softening that results from the heating? Well, there are two critical issues with regard to the heating in these systems. There is the heating... It heats to seal and it heats to soften. I understand. It heats to seal and heats to cut in the melting type systems. Right. Shanklin specifically states in their summary of the invention section that they are only concerned with heating as it relates to the sealing aspect. Well, that is... It's interesting to me that that's what they say, but that doesn't seem to be consistent with the description of Shanklin in the specification, which describes a considerable degree of heating. Isn't that what's going on in Shanklin if you read the specification other than their state statement that they aren't concerned with softening? Shanklin is a mechanical, sharp, serrated blade, guillotine-like cutting apparatus. The noses of the seal bars come down, press against the film layers, and then the blade comes down and does a retractable, guillotine-like cut with a sharp, serrated blade. Shanklin specifically states that because that cut is made mechanically, they do not soften the film at the cutting edge. The softening only takes place, if you will, out at the seal bars, where they are concerned with only the temperature that as relates to sealing. Temperature is irrelevant to how Shanklin cuts. Shanklin could cut with no heat. That sharp, serrated blade, it would be like with your saran wrap when you rip it off the serrated blade on the edge of the box. There's no heat required to make that cut, but the sealing in Shanklin specifically is directed to the sealing operation. Shanklin specifically states that because the cut is made mechanically, rather than by softening the film, they then are not concerned about getting residue buildup on the blade because the sealing is done at a lower temperature. But the blade in Shanklin is heated, correct? They say that the blade is trapped between the seal jaws. And therefore is heated. And there is heat. The blade is heated. And it even goes so far as to say the blade is heated to the previously determined temperature, which I think is higher than the temperature that you heat the blade to. Well, the fact that the blade has heat, the claimed invention requires that the blade have a cutting edge which is adapted to transfer that heat from the blade to the layers of to the pass-through of the blade through the film. Shanklin has no teaching whatsoever that there is any configuration that the blade transfers that heat to the film for purposes of softening the film along the cutting edge. It is just an instantaneous, razor-sharp, guillotine cut. There is no recognizable softening stage where the blade will transfer heat to the layers of film along the cutting edge as claimed. Mr. Lake, you haven't allowed claim, is that right? We do have allowed claim for, yes, Your Honor. And my overall impression, tell me if this is an oversimplification, is that the office was concerned more with the breadth and the absence of limitations in your broader claims that were remedied in that was allowed. And the allowed claim is quite narrowly drawn, but can be read, seems to me, to be describing what you're telling us is the invention. Is that accurate? If I understand your question correct, Judge Newman, there's never been a discussion during this entire re-examination proceeding about whether or not there was any over-breadth or breadth to the claim language that was ambiguous or amenable to differing interpretations or that was not clear-cut. I would submit with great respect that this claim, Claim 1, is very clear. It includes a positive and a negative limitation of that the blade must be adapted to transfer heat from the blade through the cutting edge of the blade to the layers of film to soften those layers of film or weaken those layers of film, make them less hard, and then whereby after that softening element has been achieved, it is only after that element has been achieved in the whereby clause that afterward the blade will then pass through the film, allowing the shoulders of the blade to then seal the film after the tip of the blade has passed through the film. Shanklin, they seal first and then slice and force the blade through the film. The claim system does it the opposite way. It puts the tip of the blade in contact with the film first, transfers that heat to that and then is able to travel through the film, allowing those shoulders to press up against. So I submit that Williams, there's no question the board has held, does not meet that limitation of softening the film along the cutting edge without liquefying. It can be accepted that Shanklin does not liquefy. We will accept that Shanklin does not liquefy the film, but they do not, and they specifically state that they do not soften the film along the cutting edge. They say, so they actually say that because their cut is made mechanically with the serrated retractable blade, that they do not soften the film along that cutting edge. That is straight from the description of Shanklin. So the Patent Office is relying on Shanklin as teaching a feature, the softening feature, that Shanklin specifically states that it does not do. And so we submit that the Patent Office has failed to present references that meet each and every one of the limitations of those claims. The examiner down below took the position that all of the claim language was merely functional intended use language, and the examiner down below didn't give any patentable weight to that language whatsoever. The board, to their credit, determined that that functional language, although functional in nature, was characterizing the invention and imparting structure. But there was so much time and effort focused on this other Bell reference that the board overturned that they looked at Shanklin and said Shanklin doesn't liquefy, and they jumped to the conclusion that it met all the claim limitations, but they forgot about the softening limitation, which Shanklin says it specifically does not do. And I see that I'm into my rebuttal time. Do you want to stay a bit while we hear from the court? Yes, thank you. May it please the court. Williams teaches almost every element of Representative Claim 1, and Shanklin teaches to cut and seal the polymer at a temperature below its melting point. Shanklin does teach to soften the film, and it says so in two places in the patent. It says so at column 2, lines 17 to 21. It says a minimum of softening of the film is encountered, and then it says column 4, softened film in the seal area. And Judge Bryson, as you said, Shanklin also teaches that column 3, lines 58 to 64, that the cutting knife is heated to essentially the same temperature as the sealing bars, and that temperature is between 270 to 280 degrees. And the examiner found on A809 that heating the blade to 270 to 280 degrees would soften the film, and that fact finding is supported by substantial evidence. I'll just talk briefly. Well, what about Shanklin's disclaimer? Maybe that's a term of art, but Shanklin says that it, in fact, does not soften the film. The blade, the cutting is not. Let me just read it in precise language because it's easy to get it wrong. The cut is made mechanically in the present image, and this is at the bottom of column 3 of Shanklin, rather than by softening the film. So that sounds like what they're saying is we do not, for purposes of cutting as opposed to for purposes of sealing, we do not soften the film. So Shanklin does both. It cuts mechanically, but it also softens the film because its blade is at 270. But that's an odd way to say it, when they say we don't soften, to say that we do both, we cut and soften. What I would have assumed, without that sentence, I would have assumed that Shanklin would be taking advantage of both the softening, which makes it easier to cut, presumably, and also the cutting, which Shanklin does, in which case that would be a very strong reference. But that sentence seems to disclaim the softening aspect of the two elements of the way that the cut is affected. Why doesn't it? I do think Shanklin cuts mechanically. That is what Shanklin says. So does the invention. Correct. And the invention, like you said, Shanklin heats to a higher temperature than even the 473 patent. So it is softening. Maybe Shanklin's not relying on the softening to do the cutting, but it's still softening. But what Mr. Lake is saying is that, I believe, is that Shanklin may have a hot blade, but that hot blade comes through the film so quickly that there's no softening effect that is produced by the heat of the blade, the guillotine effect. But that's just attorney argument. And the examiner made a finding of fact on A809 saying when the blade is heated to 270 to 280 degrees, it's going to soften the film next to the blade. And the 473 patent says that it softens the film next to the blade when it's heated to a much lower amount. So that fact finding is supported by substantial evidence. The court has no questions on any other issues? What troubles me here is that it looks as if with a bit more specificity in the broader claims, these objections could have been overcome. It was an ex parte reexamination. How does that work in the relationships between the applicant and the examiner? As far as I know, these were their original claims, which they chose not to amend. They added some new claims. They always had the opportunity to amend these claims if they so chose. I see nothing of that in the file history. Like you said, claim four was not rejected, which has further limitations. The court has no further questions. I'll yield my time. The solicitor maintains that there is perhaps an inherent softening of the film that is occurring in some instantaneous manner as this Shanklin guillotine blade comes down and cuts the film. I would submit that that is an unreasonable interpretation of Shanklin. Shanklin specifically states that he does not have to rely on temperature to cut. His temperature is only, if I may cite to column two of Shanklin, where Shanklin states in lines 11 through 13 that the present invention is designed to concentrate on only the sealing temperature. They concentrate only on the sealing temperature since the cut is accomplished mechanically. There is no teaching or disclosure in Shanklin of configuring that blade to transfer heat to the layers of film to soften along the cutting edge. Shanklin's blade is a serrated blade. There is no configuration of that blade to transfer heat through those serrated edges along the cutting edge to facilitate the cut. So the office tells us that they're entitled to give the references in your claims the broadest reasonable interpretation. And so you tell us that that's not reasonable, but they've given it that interpretation. Don't you have an opportunity to add limitations to the claim, to clarify that you're not reaching or overreaching into the direction that the office has, let's say, unreasonably imparted to the reference? Well, in this case, Your Honor, it's very interesting. We interviewed this case with the examiner and the panel several occasions, three times. After the second interview, it was agreed that the claims were all going to be allowable with a very small, very small clarifying amendment to Claim 1, adding the term softened layers of film later on in the claim. We had agreement. The examiner then changed his mind and issued a final rejection. We then posited claim amendments during the re-exam after final. The examiner refused to enter them based on creating a new issue, which was, again, an improper, unfair predicament to put us in, in an after-final situation after changing his mind in the interview, and that is of the record down below. I wasn't hanging the examiner out to dry for changing his mind because they're entitled to do that, but it put us behind the eight ball in terms of possibly modifying the claims to address those concerns. But we went to appeal. Most of the argument down below was based on this other Bell reference. We had declarations. Even though we submitted that the Patent Office had not met their prima facie case of obviousness, we submitted substantial evidence of non-obviousness showing that even if you could combine the references to reach all those limitations, turning the temperature down on the Williams device would render it inoperable. It would change the whole principle of operation of Williams. Williams is a melting system. The blade comes in and melts its way through the film, which facilitates the cutting and the sealing of the film. The film beads up along the edges and it helps facilitate the fusing of the film together. If you were to just turn the temperature down so it doesn't liquefy anymore, Williams would not be able to cut. It would not be able to function the way it was intended. It would have to turn itself into that retractable blade in order to cut. And that is not just attorney argument. That is expert testimony in this case that has been submitted. What in Shanklin do you find to derive the notion that the blade is a guillotine type blade that does not have sufficient, is not sufficiently close to the film or is not otherwise transferred? Yes, Your Honor. As opposed to, let's say, the invention where the blade does transfer heat. Yes. In column three, lines 56 onward, it talks about the operation of the retractable blade and how it forces its way through the film. It does, but so does yours. Yours forces its way through the film because it doesn't melt the film. It just makes it easier for the blade to get through. My question is, where do you derive from Shanklin this notion that this blade, no matter how hot it is, is coming from way up here and going through the film so fast that there can have been no effect of a heat transfer in any degree in softening the film, which is your argument as I understand it. Well, it is based on expert declarations in the case that hold that Shanklin is a mechanical serrated retractable blade that does not do that. It is expert declarations in this case, Your Honor, for that proposition. Let me interrupt you. You're way above your time and this is a bit irregular, but patent office solicitor's person sat down a bit too quickly, so we still have a remaining question for her if you have no objection to that, and then we'll give you a minute to respond if it's necessary to anything the patent office has to say, if that's okay. Sometimes you all behave more quickly than we are willing to accept. It's a bit unusual, but why don't we ask Ms. Lynch if she'll approach again. You had about 10 minutes remaining, so we've got a lot of time left. I want to ask you an embarrassing question. Okay. Accepting what Mr. Lake has told us, that he missed an opportunity to make additional amendments during the ex parte reexamination for whatever reasons perhaps are irrelevant, but we do know that one of the procedures and advantages of the ex parte reexamination is the opportunity to sharpen your claims one or another. So if it was accurate that this opportunity was missed and might have clarified things further, isn't it appropriate for the office to take the case back and essentially pick up where the reexamination was left off? I'm not quite prepared to answer that because I don't know the facts of what happened, but my understanding... We don't know, so let's just accept that something or other happened, which prematurely cut off the opportunity to amend and negotiate during the reexamination. Is an appropriate judicial remedy to send it back to essentially revive that opportunity? I think not, Your Honor, because I think this did have a full prosecution, and I think if they were only trying to amend after final, that was too late, without having gone back and looked through the record. But it sounds like, from what counsel said, it sounds like they did miss their opportunity to do so, and we do have procedures in place. Mike, you had exceeded your time, but if you want to respond to the last issue, we'll give you a minute. Only the last issue, Your Honor. Okay, I would feel that it would certainly be within the equitable powers of this court to send the case back down for reexamination to continue that proceeding, but I respectfully submit that that is not necessary in this case based on the prima facie case of obviousness that has not been made as well as the substantial evidence of non-obviousness that has been submitted in this case. The solution to a long-felt need of keeping a blade sharp, which the patent owner has solved in this case, which was identified by both Shanklin and by the patent owner. Shanklin talks about the difficulty of keeping blades sharp. Mr. Knoll's patent talks that they can use a blade that is less sharp. It is more safe. It doesn't have the maintenance issues related, and so there is solution to long-felt need. There is commercial success shown in this case. There is rebuttal evidence that Williams would not function just by turning the temperature down, and I respectfully lay this case before this court for a reversal of the board's decision.